UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

MONROE DIVISION

| | | |
|---|---|---|
| **RODNEY LABORDE AND LORI LABORDE** | * | **CIVIL ACTION NO. 12-2328** |
| **VERSUS** | * | **JUDGE ROBERT G. JAMES** |
| **TREADWELL RESTAURANTS OF LA, LLC, ET AL.** | * | **MAG. JUDGE KAREN L. HAYES** |

**MEMORANDUM RULING**

Before the undersigned magistrate judge, on reference from the District Court, are two motions filed by plaintiffs Rodney Laborde and Lori Laborde: 1) a motion for leave of court to file an amended complaint [doc. # 12]; and 2) a motion to remand [doc. # 15]. The motions are opposed. For reasons assigned below, the motions are GRANTED.[1]

**Background**

On August 7, 2012, Rodney Laborde (hereinafter, sometimes referred to as "Laborde") and his wife, Lori Laborde, both Louisiana domiciliaries, filed the instant suit for damages in the 4th Judicial District Court, for the Parish of Ouachita, State of Louisiana, against defendants Treadwell Restaurants of LA, LLC ("Treadwell"); an unknown manager of Treadwell; and Treadwell's liability insurer, Zurich American Insurance Company ("Zurich"). Plaintiffs allege that on September 8, 2011, they went to the Treadwell-owned and operated Kentucky Fried

---

[1] As these motions are not excepted within 28 U.S.C. § 636(b)(1)(A), nor dispositive of any claim on the merits within the meaning of Rule 72 of the Federal Rules of Civil Procedure, this order is issued under the authority thereof, and in accordance with the standing order of this court. Any appeal must be made to the district judge in accordance with Rule 72(a) and L.R. 74.1(W).

Chicken ("KFC") restaurant at 1706 Martin Luther King Boulevard to purchase something to eat. (Petition). After they paid for their meal, and while they were traversing the dining room toward a table, Rodney Laborde slipped and fell to the wet floor. *Id.*, ¶ 3.

Plaintiffs attributed the accident to the failure of Treadwell's unknown manager, or one of his subordinates, to place a sufficient number of signs to warn customers about the slippery and dangerous conditions prevalent in the area where Laborde fell. *Id.*, ¶ 4. Moreover, because Treadwell's manager was acting within the course and scope of his employment, plaintiffs contend that Treadwell is solidarily liable with its manager for plaintiffs' damages. *Id.*, ¶ 5.

As a result of the fall, Laborde sustained severe bodily injuries to his shoulder, neck, right arm, and other areas. *Id.*, ¶ 7. Plaintiffs seek recovery against defendants for all of their resulting and related damages, including Lori Laborde's claim for loss of consortium. *Id.*, ¶¶ 7-10.

On September 6, 2012, defendants, Treadwell and Zurich, timely removed the matter to federal court on the apparent basis of diversity jurisdiction. *See* Notice of Removal. Upon prompting by the court, removing defendants amended their notice of removal to allege complete diversity of citizenship, and to establish that the amount in controversy exceeded the requisite jurisdictional minimum. (Dec. 27, 2012, Order [doc. # 8] and Amended Notice of Removal [doc. # 9]). In so doing, removing defendants reasserted that the citizenship of the unknown manager defendant must be disregarded for purposes of diversity because he was sued under a fictitious name. *See* 28 U.S.C. § 1441(b)(1).

The record reflects that by November 29, 2012, plaintiffs had discovered that Darrell Jackson was the unknown restaurant manager whom they had sued fictitiously. *See* Rule 26(f)

Case Management Report [doc. # 6].  Moreover, although plaintiffs stated their intention to seek leave of court to substitute Darrell Jackson in lieu of the fictitiously named restaurant manager, they did not file the instant motion for leave to amend until February 14, 2013.  Plaintiffs attributed the delay to their inability to depose Jackson until February 12, 2013. (M/Leave [doc. # 12]).

Because Jackson is non-diverse, his substitution will destroy the court's diversity jurisdiction and compel remand.  28 U.S.C. § 1447(e).  Consequently, plaintiffs also filed a motion to remand in the event that the court grants their motion for leave to amend.  Removing defendants oppose both motions.  The matter is now before the court.

## Law and Analysis

**I.      Motion for Leave to Amend**

A proposed amendment to substitute a named party for a fictitiously named party may be considered under Rule 15.  *See Doleac ex rel. Doleac v. Michalson*, 264 F.3d 470, 475 (5th Cir. 2001).  Rule 15 provides that leave to amend shall be "freely [granted] when justice so requires." Fed.R.Civ.P. 15(a)(2).  This rule is circumscribed, however, by 28 U.S.C. § 1447(e) which states that "[i]f after removal the plaintiff seeks to join additional defendants whose joinder would destroy subject matter jurisdiction, the court may deny joinder, or permit joinder and remand the action to the State court."  28 U.S.C. § 1447(e); *Ascension Enters. v. Allied Signal*, 969 F. Supp. 359, 360 (M.D. La. 1997) (Section "1447(e) trumps Rule 15(a).").  Furthermore, if permitted, the substitution of a non-diverse, named defendant for a fictitiously named defendant will destroy subject matter jurisdiction, and compel remand.  *Doleac, supra*; 28 U.S.C. § 1447(e).

3

Under these circumstances, courts are required to "scrutinize [the] amendment more closely than an ordinary amendment." *Hensgens v. Deere & Co.*, 833 F.2d 1179, 1182 (5th Cir. 1987). Specifically, the court must balance the defendant's interest in maintaining a federal forum, with the competing interest of avoiding parallel lawsuits by considering the following "*Hensgens* factors,"

> [1] the extent to which the purpose of the amendment is to defeat federal jurisdiction, [2] whether the plaintiff has been dilatory in asking for amendment, [3] whether plaintiff will be significantly injured if amendment is not allowed, and [4] any other factors bearing on the equities. The district court, with input from the defendant, should then balance the equities and decide whether amendment would be permitted. If it permits the amendment of the non-diverse defendant, it must remand to the state court. If the amendment is not allowed, the federal court maintains jurisdiction.

*Wilson v. Bruks-Klockner, Inc.*, 602 F.3d 363, 367-368 (5th Cir. 2010) (citation omitted).

In the matter *sub judice*, neither side mentions or discusses the *Hensgens* factors in their memoranda. Instead, the parties limit their discussion solely to whether plaintiffs have a reasonable possibility of recovery against the restaurant manager, Jackson. Thus, the court will address this issue first.

a) <u>Colorable Claim</u>

A plaintiff will not be "significantly injured" by a court's denial of leave to add a clearly meritless claim. *Wilson*, 602 F.3d at 368. Thus, it is within a district court's discretion to deny a proposed amendment as futile, if there is no reasonable basis to predict that plaintiff will be able to recover against the would-be, non-diverse defendant. *Id*. Indeed, leave to amend to join a party "against whom recovery is not really possible and whose joinder would destroy subject matter jurisdiction," should never be granted. *Cobb. v. Delta Exports, Inc.*, 186 F.3d 675, 678

(5th Cir. 1999). The party opposing joinder has the opportunity to prevent joinder by arguing that plaintiff has no "colorable claim" against the proposed defendant. *Id*. In so doing, the district court may permit "limited discovery into 'discrete and undisputed facts' that had been omitted from the complaint and that might preclude recovery against the in-state defendant . . ." *Wilson*, 602 F.3d at 373 (citing *Smallwood v. Ill. Cent. R.R. Co.,* 385 F.3d 568, 573-74 (5th Cir.2004). In other words, the court may "pierce the pleadings," as is sometimes done in an improper joinder analysis.[2]

    1)    <u>Corporate Officer or Employee Liability</u>

Louisiana law provides that in limited circumstances a corporate officer or employee may be held individually liable for injuries to third persons. *Ford v. Elsbury*, 32 F.3d 931, 935 (5th Cir. 1994) (citing *Canter v. Koehring Co.*, 283 So.2d 716 (La. 1973)). The liability may be imposed on such individuals even if the duty breached arises solely from the employment relationship. *Ford*, 32 F.2d at 936. Liability may be imposed on a manager under the following conditions:

> 1. The principal or employer owes a duty of care to the third person . . . breach of which has caused the damage for which recovery is sought.
>
> 2. The duty is delegated by the principal or employer to the defendant.
>
> 3. The defendant officer, agent, or employee has breached this duty through personal (as contrasted with technical or vicarious) fault. The breach occurs when the defendant has failed to discharge the obligation with the degree of care required by ordinary prudence under the same or similar circumstances-whether such failure be due to malfeasance, misfeasance, or nonfeasance, including when the

---

[2] Albeit, the improper joinder doctrine, *per se*, does not apply to post-removal joinder(s). *Cobb*, 186 F.3d at 677.

5

>failure results from not acting upon actual knowledge of the risk to others as well as from a lack of ordinary care in discovering and avoiding such risk of harm which has resulted from the breach of the duty.
>
>4. With regard to the personal (as contrasted with the technical or vicarious) fault, personal liability cannot be imposed upon the officer, agent, or employee simply because of his general administrative responsibility for performance of some function of the employment. He must have a personal duty towards the injured plaintiff, breach of which specifically has caused the plaintiff's damages. If the defendant's general responsibility has been delegated with due care to some responsible subordinate or subordinates, he is not himself personally at fault and liable for the negligent performance of this responsibility unless he personally knows or personally should know of its non-performance or malperformance and has nevertheless failed to cure the risk of harm.

*Ford v. Elsbury*, 32 F.3d 931, 936 (5th Cir. 1994) (citing, *Canter*, 283 So.2d at 721).

It is manifest that, "[a] merchant owes a duty to persons who use his premises to exercise reasonable care to keep his aisles, passageways, and floors in a reasonably safe condition. This duty includes a reasonable effort to keep the premises free of any hazardous conditions which reasonably might give rise to damage." La. R.S. 9:2800.6(A). Generally, "the owner or operator of a facility has the duty of exercising reasonable care for the safety of persons on his premises and the duty of not exposing such persons to unreasonable risks of injury or harm." *Mundy v. Department of Health and Human Resources*, 620 So.2d 811, 813-814 (La.1993) (citations omitted). Furthermore, "[t]he owner or custodian is required to discover any unreasonably dangerous conditions on the premises and correct the condition or warn potential victims of its existence." *Hutchison v. Knights of Columbus, Council No. 5747,* 847 So.2d 665 (La. App. 4th Cir. 5/7/2003), *affirmed*, 866 So.2d 228 (La. 2004). *Id.* An employee can be held individually liable by a third person for breach of a duty that arises out of the employment or agency relationship between the employee and her employer. *Canter*, 283 So.2d at 722-723.

    2)    <u>Evidence & Analysis</u>

As recounted above, plaintiffs alleged in their original complaint that the KFC manager, *i.e.* Jackson, or one of his subordinates, failed to place enough warning signs in the restaurant, including the dining area where Laborde fell. (Petition, ¶ 4). In their proposed amended complaint, plaintiffs add a paragraph alleging that Jackson breached his managerial responsibility to maintain the cleanliness and safety of the customer area. (Prop. Amend. Compl., ¶ 4(a)).

Defendants contend that the foregoing allegations simply assert violations of Jackson's general managerial responsibilities, and fail to set forth the breach of any independent duty owed by Jackson to plaintiffs. (Opp. Memo., pg. 6). In support of their argument, defendants cite to Jackson's deposition wherein he testified that it was the duty of the front counter cashier to maintain the cleanliness and safety of the customer area. (Jackson Depo., pgs. 8-9; Def. Opp. Memo., Exh. A).

However, Jackson further testified that during his tenure at the restaurant, it has been the restaurant's practice to keep three wet floor signs on permanent display throughout the establishment. (Jackson Depo., pgs. 11-13; Pl. Reply, Exh. P).[3] Jackson explained that one of

---

[3] Jackson also testified that there was a wet floor sign near where Laborde fell, and that he observed nothing on the floor where Laborde purportedly slipped. (Jackson Depo., pgs. 13-14). Although plaintiffs contest these facts in their petition, they did not support their allegations with competent summary judgment evidence. Nevertheless, because the foregoing testimony by Jackson, if credited, arguably would preclude plaintiffs' claims against all defendants alike, the court cannot rely upon them as a basis to find that plaintiffs have no colorable claim against Jackson. *See Smallwood, supra*. Furthermore, in *Wilson*, the Fifth Circuit expressed its disapproval with the district court's alternative holding denying leave to amend because of plaintiffs' failure to present evidence under circumstances, where 1) the non-diverse defendant was not yet a party to the case, and 2) the district court had not permitted discovery on the issue

7

his duties was to ensure that cashiers went out to check on customers. *Id*., pgs. 7-8. Toward this end, it was Jackson's responsibility, as the manager on duty, to effect a "figure eight route," every 30 minutes. *Id.*, pgs. 14-15. This procedure required Jackson to go "outside" to the dining room to check on customers to confirm that everything was going well; to exit the restaurant and ensure that the parking lot remained clear; and to check the restrooms to see whether they were properly stocked. *Id*.

In other words, Jackson's employer required him to walk around the restaurant and the parking lot every 30 minutes to ensure that all was well. Pursuant to this duty, Jackson arguably should have discerned whether there was an unsafe condition that the cashier had overlooked or negligently created.[4] As the Fifth Circuit observed, "[a] supervisor's knowledge of the dangers present 'could give rise to the personal duty contemplated in *Canter*.'" *Id*. (citing *Hayden v. Phillips Petroleum Co.*, 788 F. Supp. 285, 287 (E. D. La.1992); *compare Guillory v. PPG Industries, Inc.*, 434 F.3d 303, 312 (5th Cir. 2005) (non-diverse defendants were not aware of the alleged unreasonably dangerous condition).[5] In short, removing defendants have not established that plaintiffs have no "colorable claim" against the non-diverse defendant.

---

of liability. *Wilson*, 602 F.3d at 373, n45.

[4] In addition, defendants have not established that Jackson delegated with due care the primary responsibility for ensuring the cleanliness and safety of the dining room area to the cashier.

[5] It is of no moment that the employer might be vicariously liable for the actions of its employee. *Ford, supra*.

b) *Hensgens* Considerations

Turning now to the *Hensgens* factors, unaided by argument from either side, the undersigned initially observes that district courts have mulled various considerations to determine whether the purpose of a given amendment was to defeat federal jurisdiction. For example, courts will ask "whether the plaintiff[] knew or should have known the identity of the non-diverse defendant when the state court complaint was filed." *Schindler v. Charles Schwab & Co., Inc.*, C. A. No. 05-0082, 2005 WL 1155862 (E.D. La. May 12, 2005). In addition, if "a plaintiff states a valid claim against a defendant, it is unlikely that the *primary* purpose of bringing those defendants into a litigation is to destroy diversity jurisdiction." *Id.*

As discussed above, plaintiffs have a viable cause of action against the proposed defendant. Importantly, plaintiffs are not seeking to add a new defendant. Instead, plaintiffs are seeking to substitute a named defendant, Darrell Jackson, for a fictitious, unknown defendant, who was included in the original petition for damages. *See Ellender v. Rite Aid Pharmacy*, C. A. No. 08-0722, 2008 WL 4200716 (W.D. La. Sept. 8, 2008).

As to the timeliness of the proposed substitution, the court observes that while plaintiffs waited more than two months after uncovering Jackson's identity before filing the instant motion, they appropriately deferred substitution (at least in this case) because of their need to discern evidence, via deposition, that Jackson owed a duty and responsibility for the conditions that caused Laborde's accident. Moreover, plaintiffs filed their motion just two days after Jackson's deposition.

As to prejudice, the court notes that plaintiffs likely will not suffer any ultimate financial

prejudice if leave to amend were denied. Indeed, Treadwell admitted that its manager, *i.e.*, Jackson, was acting within the course and scope of his employment at the time of the accident. (Answer, ¶ 5). Thus, Treadwell is liable for Jackson's negligence. La. Civ. Code Art. 2320. On the other hand, it is conceivable that plaintiffs could suffer some prejudice in discovery and case preparation if Jackson were to remain a non-party. *See Ellender, supra*. In addition, if leave to amend were denied, and plaintiffs wished to pursue their claim against Jackson, they would have to bear the burden of maintaining parallel lawsuits arising out of the same set of facts in both state and federal courts. Thus, this third factor also weighs in favor of remand.

Finally, the other considerations "bearing on the equities" weigh in favor of remand. The possibility of parallel lawsuits threatens judicial resources as well as the time and resources of the witnesses in the case. Moreover, there would be a danger that the courts could reach inconsistent results. Although the court realizes that removing defendants have an interest in retaining their chosen federal forum, this interest alone does not justify the requested denial of leave to amend.

For the foregoing reasons,

IT IS ORDERED that plaintiffs' motion for leave to amend [doc. # 12] is hereby GRANTED.

II.  **Motion to Remand**

The substitution of a non-diverse, named party for his fictitious alias destroys the court's subject matter jurisdiction. *Doleac, supra*. Once substitution of a diversity-destroying defendant is permitted, remand to state court is not merely discretionary, it is mandatory. *Id*.; 28 U.S.C. § 1447(e). Accordingly,

10

IT IS ORDERED that plaintiffs' motion to remand [doc. # 15] is hereby GRANTED.

THUS DONE AND SIGNED in chambers, at Monroe, Louisiana, this 9th day of April 2013.

KAREN L. HAYES
U. S. MAGISTRATE JUDGE